# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON KULHANEK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-02431-JAR |
| | ) | |
| CINDY GRIFFITH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff, a former inmate at Potosi Correctional Center, brought this action under 42 U.S.C. § 1983 alleging that his Eighth and Fourteenth Amendment rights were violated by the implementation of security orders on January 25, 2016, August 19, 2016, and February 21, 2017. Specifically, Plaintiff alleges that the security orders called for daily videotaped strip and cell searches, the use of painful mechanical restraints, and movement into a cell with a camera so that he could be under constant supervision. This matter is currently before the Court on Plaintiff's motions for production of documents and camera footage (Doc. No. 74) and for appointment of counsel (Doc. No. 73).

### **Plaintiff's Motion for Production**

On January 7, 2020, Plaintiff moved to re-open discovery so that he could better oppose Defendants' motion for summary judgment. (Doc. No. 64). In his motion, Plaintiff stated that he would "need documents the Defendants possess as well as video footage" to defend his claim. (*Id.*). On January 30, 2020, the Court directed Plaintiff to identify and explain the relevancy of the documents and video footage he sought so it could rule on Plaintiff's motion. (Doc. No. 71).

On February 12, 2020, Plaintiff filed the instant motion specifying several documents and

video footage. Plaintiff first requests any and all documents pertaining to security orders starting on January 25, 2016, August 19, 2016, and February 21, 2017. On January 27, 2020, Defendants submitted a statement of material facts which contained several exhibits. (Doc. No. 65). The exhibit list included the Conduct Violation and Disciplinary Action Reports that preceded Plaintiff's security orders (Exs. 5-7, 9-12, 14-16), as well as Plaintiff's January 25, 2016, August 19, 2016, and February 21, 2017 security orders. (Exs. 8, 13, 17). As a result, the Court finds that Defendants have already supplied the documents relevant to Plaintiff's security orders and will not re-open discovery for that request.

Plaintiff next requests logs detailing the periodic reviews of his security orders, logs of his cell and strip searches starting on February 21, 2017 through November 31, 2017, and any and all logs that claim Plaintiff was suicidal or required close observation from February 21, 2017 through April 20, 2017. Plaintiff fails to present any argument as to why logs detailing the review of his January 25, 2016 and August 19, 2016 security orders are relevant to his claim and, as such, the Court will not direct Defendants to respond to this request. Plaintiff does argue that the logs detailing the review of his February 21, 2017 security order and search logs of his cell between February 21, 2017 and November 31, 2017, are relevant because they will show that he was without incident during this time period, thereby proving that the continuation of strip and cell searches were unwarranted and abusive. Plaintiff further specified that the prison's mental health logs will show that he was neither suicidal nor requested close observation preceding his movement into a videotaped cell, helping to show that the movement from a non-videotaped cell to a videotaped cell was retaliatory. Defendants have produced no documents or logs indicating that Plaintiff engaged in a forbidden activity during the life of his February 21, 2017 security order or that Plaintiff experienced a mental health crisis that triggered his movement into a videotaped

2

cell. The Court finds that Plaintiff can make the argument that the searches and cell movement constituted retaliation and harassment through inference based on the absence of these materials. Therefore, the Court will again refrain from directing Defendants to produce any reviews of security orders, search logs, or mental health logs.

Finally, Plaintiff argues that Defendants should produce the bed movement logs from February 21, 2017 through April 21, 2017, to show that he was moved into a videotaped cell, any documents explaining why he was placed in the videotaped cell, as well as video footage of his searches to prove he was being videotaped while being strip searched. To date, Defendants have neither confirmed nor denied that Plaintiff was placed in a videotaped cell or if he was videotaped during his strip searches. Defendants have generally stated that there are cells with cameras at Potosi Correctional center and that these cells can be used "to house an offender without a mental health crisis [if] their behavior demands it to protect prison staff and other offenders." (Doc. No. 65 at ¶ 22). Defendants have not explained, however, whether Plaintiff was placed in a camera cell to protect others or if (and if, then why) he was videotaped during strip and cell searches. Plaintiff alleges that Defendants placed him under constant surveillance and strip searched him on camera for the purpose of harassing him. (Doc. No. 1). As such, the Court finds that these materials could be relevant to Plaintiff's claim and will direct the Defendants to either supply the bed movement logs for the requisite dates, the documents explaining his placement in the camera cell, and the video footage of his searches or provide a response as to why these materials should not be discoverable.

## Appointment of Counsel

Plaintiff seeks appointment of counsel because he claims to have limited legal knowledge, his case is complex, and his transfer to another prison has made it difficult for him to conduct fact

investigation. Although the Court has discretion to appoint counsel when necessary, there is no constitutional right for a pro se plaintiff to have counsel appointed in a civil case. *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011); *Phillips v. Jasper County Jail*, 437 F.3d. 791, 794 (8th Cir. 2006). Among the factors a court should consider in making this determination are the factual and legal complexity of the case, the ability of the plaintiff to present the facts and his claims, and the degree to which the plaintiff and the court would benefit from such an appointment. *Phillips*, 437 F.3d. at 794.

On March 14, 2019, the Court denied Plaintiff's first motion for appointment of counsel because the case was neither factually nor legally complex, and Plaintiff had shown that he could adequately present his claims to the Court. (Doc. No. 28). More recently, on January 30, 2020, the Court again denied Plaintiff's request on similar grounds. Upon review of the record, the Court again concludes that this case is neither factually nor legally complex and that Plaintiff has aptly demonstrated his ability to present his claims. Thus, the Court will deny Plaintiff's motion for appointment of counsel.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for production of documents and camera footage (Doc. No. 74) is **DENIED in part**. The Court will not direct Defendants to produce: (1) any and all documents pertaining to security orders starting on January 25, 2016, August 19, 2016, and February 21, 2017; (2) logs detailing the periodic reviews of Plaintiff's security orders; (3) search logs starting February 21, 2017 through November 31, 2017; or (4) any and all logs that claim Plaintiff was suicidal or required close-observation from February 21, 2017, through April 20, 2017. The Court will direct Defendants to either produce the bed movement logs from February 21, 2017 through April 20, 2017, the documents explaining why Plaintiff was

4

placed in a camera cell, and the handheld and wing camera footage of Plaintiff being searched from February 21, 2017 through November 31, 2017, or respond as to why these materials should not be discoverable within **seven (7)** days of this order.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel (Doc. No. 73) is **DENIED** without prejudice.

Dated this 26th day of February, 2020.

*John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE